21-6069. Ms. Yaffe. Good morning, Your Honors. My name is Leah Yaffe and I represent Mr. Michael Winrow. Mr. Winrow is entitled to relief unless this court is certain that his prior convictions for Oklahoma aggravated assault and battery constitute violent felonies. As detailed in the briefing, there are two independent reasons why they do not. But to start with the first, Oklahoma aggravated assault and battery is an indivisible statute and the least act criminalized by that statute is the slightest touching when committed by a person of robust health against one who is aged, decrepit, or incapacitated. Such conduct falls short of the violent force required under the ACCA. So turning first to the divisibility analysis, nothing the government has brought forward conclusively answers the means-elements question. To the contrary, the three MAFIS tools strongly suggest, if not prove, that Oklahoma aggravated assault and battery is indivisible. To briefly recap, the statute has a single name and a single punishment range and nothing on its face that indicates divisibility. Oklahoma's highest criminal court has analyzed both statutory alternatives when reviewing a single count for sufficiency of the evidence. And the Shepard documents make clear that Mr. Winrow was convicted under the aggravated assault and battery statute as a whole. I'm going to ask that the uniform jury instructions are separate from the two ways the statute can be applied. Yes, so the government points out that there are two separate jury instructions for the two statutory alternatives and a few points on that, why it's not very probative in this case. As a threshold point, we know that can't be dispositive of divisibility because Oklahoma has another statute that is indivisible with separate jury instructions, and that's first-degree murder. And then particularly in this case, if the court looks at the Harrington case, which is an OCCA case, that indicates that the jury was instructed on both statutory alternatives when looking to evaluate a single count of aggravated assault and battery. So if the probative force of having separate jury instructions is that the assumption is you're only presenting one to the jury, we know that's not the case here in Oklahoma because it didn't happen the other way in Harrington. In one case. In one case it happened. Yes, it's also the only case that I'm aware of that analyzes the second statutory alternative in any kind of detail, so I don't think the fact that it's one is necessarily— It doesn't answer our question, though, whether these are means or elements. I think Harrington is— They didn't take up that issue. They did not take up that issue directly. I think it's a strongly probative case. I don't think it's dispositive of the question, but it does show that when there was a single conviction of aggravated assault and battery, the jury looks at both statutory alternatives. And then the OCCA, in reviewing for the sufficiency of the evidence, looks at both statutory alternatives, and there'd be no reason for the court to do that if it was clear that the defendant had been convicted under one alternative or the other. The reason these cases are impossible is because the issue regarding elements comes up only if you're considering whether a jury could convict even though half are finding guilt with respect to the first alternative and the other half with respect to the second. And that just doesn't come up. But did it in Harrington? Do we know whether the jury was instructed that they had to unanimously agree on one alternative or the other, or were not instructed that way? It's not explicit in the case. I think the strong inference is that the jury was not instructed to unanimity, although I can't say that for certain. The reason is because this is a case where the defendant was alleged to have left an infant child bruised and swollen. And you can see how the government might want to rely on both a theory of great bodily injury or that this is a potentially weaker person. This is before the decrepit was ruled not to include infants. And what the court's looking at is saying, you know, they can't have found great bodily injury here. A bruise and swollen wasn't enough. And they also can't have found that this was a decrepit individual because an infant doesn't count. Making that kind of reasoning is indicating that it's not clear at all whether the jury was unanimous on either statutory alternative. And if the jury had to be unanimous, I think the court would have gone about this a different way and just looked at the statute that they convicted, or the alternative that they convicted under. Well, the problem is we don't really have any case. I mean, the government cites Porter, which they can make similar arguments as you're making about Harrington, about what it meant or what it means to the means-elements question. But the problem here is we don't really have any state court decision that is really particularly helpful. So two points on that. First, even if that's the case, that weighs in favor of the defendant here. The government needs to show a certainty that this is divisible. So if we're in a realm where this is just confusing, then that's a reason to find that this is an indivisible statute. I'd also just push back on the idea that Porter is kind of equivalent to Harrington. Porter, there's one sentence in that case in which the court says that aggravated assault and battery is not a lesser included offense of assault and battery with a dangerous weapon. And in saying that, makes the point that neither alternative of this statute is an element of the other. They don't engage at all in the means-elements analysis. There's no reason for them to engage in the means-elements analysis. Well, same thing in Harrington. But what the court does say in Porter is that alternatively, the statute requires proof alternatively, alternatively, not either or, but alternatively, of great bodily injury to the victim or, or, either or. Not potentially both as means, but either or as elements. It's the same thing. What I'm saying is you can make inferences from that, but it's tough to convince us that that particular factor in our toolbox as we say of factors is important. Can you talk about the documents from the prior conviction? Sure. You mentioned that they are consistently referring to the statute as a whole, but they never mention, they don't contain a single reference to A2. They talk about A1, right? It's correct that there's references to facts that would go towards A1, but in the charging documents, the plea agreements, and particularly both sets of judgments, the statute is referred to as aggravated assault and battery, no description. And then when there is a statutory citation, it's only to the full statute. So every time you're talking about what was this person convicted of, they refer to the whole statute. There are facts in the charging document and in the pleas that indicate that this may have been committed, sure, like means by subsection one. But as this court explained in Johnson, in Oklahoma, the charging documents have to include enough facts to enable a defendant to prepare for trial. So that can't be dispositive for the government. And just as a practical matter, it's not surprising that a court might be able to discern from these types of documents the factual means by which a defendant committed a crime. But as Mathis tells us, it's not the facts that matter, it's the elements. And so when you look at these documents, what is he charged with and what is he judged to have convicted? It's the statute as a whole. And I think that's pretty strong authority for the defendant that this is an indivisible statute. What about the fact, I don't think you argued this, but what about the fact that the two types of alternatives, I'll call them alternatives right now, are so very distinct, so very different. Isn't it true that we can consider that, and doesn't that lead us to think of their elements as opposed to alternatives? I'm not aware of authorities saying that the distinction between the means is so significant. I mean, in fact, in Degary, this court found that the forcible sodomy subsections were all indivisible. Even though that criminalizes a range of conduct from essentially statutory sodomy to... We didn't talk about that factor, I don't think, in Degary. Did we? I'm not sure if the court explicitly talked about it, but I think the fact that the statute nonetheless does cover a wide range of conduct is probative here as to why that wouldn't be relevant in this case. Or at least not relevant enough to get the government to certainty. And just to talk about the last mathis factor, the statutory text, just to note that the government puts forward only one affirmative argument here, and it's about subsections, and this court has disregarded that argument as persuasive several times, and particularly the argument the government's making based on Maldonado-Palma. This court squarely rejected that in Degary, and again, we know that Oklahoma has indivisible statutes that have separate subsections, forcible sodomy being one of them. So, if there are no further questions on divisibility, the next question is, under the categorical approach, does the statute as a whole categorically match the elements clause, and it does not. I'll start by just saying there's no question, I don't think the government disputes, that Oklahoma Battery requires only the slightest offensive touching. That's established, this court has held that in published opinions. And that should really be the end of the analysis in this case, because as this court recognized in its unpublished issues in Mason, there appears to be no significant difference between assault and battery, and battery in Oklahoma. And we know that from... On the first point, there's a UJI defining force. That's correct. That says what you're saying. Exactly. And there's also a UJI defining what simple assault and battery is, and that entire UJI is a definition of battery. There's nothing else to it. It just recites the statutory definition of battery. There's nothing about some other elements of assault, and I think that's really probative here on how Oklahoma treats assault and battery. They treat it as battery. And the government would ask the court to ignore that authority, ignore its own unpublished decision in Mason, and start interpreting this state law from scratch, based on some generic canons of interpretation. And I don't think that those hold up. But even if the government were somehow correct, that you do have to separately prove elements of assault when you're faced with an assault and battery, the Least Criminalized Act would still not be a violent felony, because Oklahoma is a common law assault and battery state, and an assault is an attempted battery. And it doesn't require this higher degree of force that the government's representing in this brief. I'm also not entirely sure that the government disputes that the Least Criminalized Act could be an intention to slightly touch someone that culminates in slightly touching someone. I'll point to the answer brief at 33 and 34, where they say the Mason court might be right some of the time about this. Well, some of the time is all we need under the categorical approach. I'll briefly turn to the second issue, if the court has no further questions on this one. So we've argued in the alternative, in the briefing, that if this were a divisible statute, and we're evaluating subsection 1, that this still is not a violent felony. And the reason is because there's not the requisite mandrea under Borden. It's plain under Borden that the requisite mandrea for a violent felony is a knowing or purposeful use of physical force against another. And that necessarily requires not only that someone know or intend to touch somebody, but that they know or intend to use physical force against someone. And physical force has a defined meaning that's greater than slightest touching. To use Borden's own language, that means that what is required is an actor make a deliberate choice of wreaking harm on another. It's also very plain under Oklahoma law that aggravated assault and battery requires only an intent to commit a battery, but does not require proof of any particular mental state with respect to the possible effect of that battery. So that necessarily means that under Oklahoma's aggravated assault and battery statute, it does not require the knowing or purposeful use of violent force against another person to be convicted, because all you need is to intend the slightest touching of another person. And unless the court has any further questions. What about the aggravated assault and battery statute, 646A1, that requires that great bodily injury be inflicted? How do you divorce that from just the intent? Oklahoma has made clear that there's no specific intent requirement that anyone know or desire for another person to be injured. So the point we're making is that you could intend a lower degree of force and, in fact, negligently or recklessly engage in a higher degree of force and not have any knowing or purposeful mens rea towards the infliction of great bodily injury. I would like to reserve the remainder of my time for rebuttal unless the court has further questions. Thank you. Thank you, Counselor. Mr. West. I'm going to ask a question before you get started. And I'm smiling at you because I feel sorry for you. Because I think the Supreme Court may have given you an impossible task. So one problem judges have when they're reversed by a higher court is then they over-interpret the reversal. So tell me what I'm missing in the following. As I understand what the Supreme Court has said, alternatives are means rather than elements. Only if a jury could convict of the crime when some jurors find one means and other jurors find a different means. So the issue here is whether someone can be convicted under the offense we're talking about. If some jurors found the first alternative and some other jurors found the second alternative. They didn't agree unanimously. Second, if there's any doubt about whether these are alternative elements, we're supposed to say that they're means. And since it's very rare for a state court to address these issues, there's almost always significant doubt. The one exception is when there are two different sentences for the two alternatives. Then we know that it's not alternative means. So if my understanding is correct, I think you have an impossible task. Tell me why you should run. Thank you, Your Honor. May it please the court. I understand. With the deck stack a little bit. I'll take your question about the Supreme Court and what jurors do have to agree on. Correct me if I mistake how your question was posed. It needs to be clear that the jurors need to agree on one particular set of elements to convict on that offense. So if it's not clear that they need to, lower courts need to find their alternative means. Your Honor, I think that's an accurate statement of the law. However, I think that's not what applies to this case in particular. So particularly for Oklahoma's aggravated assault and battery statute, in terms of the divisibility analysis, as opposing counsel walked through and as we walked through in the briefing, there is the MAPIS toolbox that essentially encompasses case law, encompasses the analysis of the text of the statute, and then also the record documents in this case, or in the particular case. As Judge Warts pointed out, the Oklahoma Court of Criminal Appeals has not directly addressed the issue of the disability, has not directly held that these are elements and not means and vice versa. Judge Warts did point out the Porter case, as we highlight in our brief, does explicitly talk about alternatively one or the other and refers to the alternatives as elements. And so I do think that is a very strong indication that they are elements, but it is correct that the court has not directly considered the question. Well, what about Harrington? As long as you're going to talk about the state court decisions, since you're here to show certainty, doesn't Harrington sort of counter Porter in the sense that neither one of them addresses the issue directly, but it doesn't make me feel real certain about Porter. We're agreeing that the court has not directly addressed the question, so I understand that. I do think Harrington, I think the only thing about Harrington is that the, the only thing Harrington stands for is that it was the only case where there is possibly, you could look at the first alternative, possibly look at the second alternative. It seemed to be tried as an elements, or I'm sorry, as a means case. I don't know, again, we don't. It was instructed and tried that way. I mean, for what that's worth, it seemed to be. Yes, Your Honor. So, again, I think, especially for the, what the jury was instructed about, how the case was charged, things like that, I think those would be important questions to know, and questions we simply don't have the answer to. Your Honor, but to the extent this court is not satisfied with Porter, it is not satisfied with the, with the case law analysis in this case. We would also look at the text of the statute as well, and so as we have pointed out in the, in the briefing of this case, there are two different subsections, and the second subsection is actually further divided out into further subsections, further alternatives, and so, and that's specifically for the aged or decrepit or, or lacking health, and so the, this court in United States v. Taylor and United States v. Mitchell. They're not really separate subsections, though, are they, aren't they? Well, they're separate alternatives. They're separate alternatives. Descriptors of the person upon one who, a person of robust health or strength upon one who is aged, decrepit, or incapacitated. Yeah, yes, Your Honor, and so. I didn't really take those as separate subsections. Separate, separate alternatives, alternatives within that, within that subsection, Your Honor, and so specifically in the United States v. Taylor case, this court did find that that was, and that that was an appropriate indicator of a further divisible, or of a divisible statute, and in, in particularly in the United States v. Taylor case, which heavily relied on United States v. Mitchell, they interpreted the same statute. The United States v. Mitchell case specifically looked at the, the, the specific differences between the two, the two alternatives and the two alternative subsections, and so here, one is status-based and one is force-based, and so these are two very different, two very different statutes, and so we do believe this court can feel certain as to the textual differences between the two subsections in terms of the visibility. However, Your Honors, if, if this court does not feel certain as to the, the visibility in terms of the textual analysis, it can also look to the, the record documents in this case, and that includes the jury instructions, the uniform jury instructions, that includes the plea documents, that includes the charging documents. Each of these tools, each of these documents, encompasses the exact phrase from Mappus, including one alternative to the exclusion of the other, and so with the jury instructions, and I know Your Honors have addressed the jury instructions already, both the jury instructions specifically talk about, only include one alternative, and they specifically say that each element of the crime needs to be proven beyond a reasonable doubt, so they use the, they're talking about elements, they're talking about a crime for each specific subsection, each alternative, and so it is indicating that these are two separate crimes, that they are crimes in the jury instructions. Second, Your Honors, in absence of a, as we have discussed, in absence of an Oklahoma Court of Appeals decision on point exclusively holding one way or the other, the state or the, the pattern jury instructions are the clearest indication of where Oklahoma, Oklahoma's law is, particularly with the divisibility question, and that's because the, by statute, and by Oklahoma Court of Appeals case law, the jury instructions need to be, must be given in any, if they apply in any criminal case, unless there is an inaccurate statement of law within the jury instructions, and there has been no indication from any case, I have seen any case that has been pointed out in this case where the jury instructions in this case, the jury instructions for aggravated assault and battery are inaccurate or an inaccurate statement of law as it applies to the statute. Didn't we find the murder, Oklahoma murder statute divisible though, isn't that what the counsel is saying? We found it was, I'm trying to remember, that was DeGear, even though there were separate jury instructions? Yes, but, yes, but the issue, but the distinction in that case is that there was a Oklahoma Court of Criminal Appeals decision on point, and there was an Oklahoma Court of Criminal Appeals decision saying explicitly that for the different alternatives, there did not need to be a unanimous jury on one particular, one particular alternative, and so we do not have that in this case. So you think it was the combination of factors in DeGear that led to that result of indivisibility? Sure, yes, but I do think on the jury instruction point, I do think that led the court not to feel certain that the jury instructions could be taken as a certain indication that the statute was divisible, but I think here, that is not the case. There is no case holding that these alternatives do not need to be agreed upon beyond a reasonable doubt to convict a defendant of that particular statute. So if we agree that the jury instructions might be in your favor, what else do you really have? I mean, I don't think the state court decisions are helping you much. The documents from the prior conviction, they don't really refer to one alternative to the exclusion of the other. They don't refer to the second alternative, but they do refer continuously to the statute as a whole. Is that the same? So it only cites the statute. So yes, Your Honor, so on the underlying charging documents, they do cite the statute as a whole. However, that was not the question, or that was not what Mathis was talking about when he was talking about referring to one statutory alternative to the exclusion of the other. It was talking about terms. It was talking about, and specifically in Mathis, it used language like premises. And it was talking about burglary. It was talking about a car, a vehicle, things like that. So it's talking about the actual words that are used within the alternative. And so in this case, on both of the information, as you mentioned, it's talking about great bodily injury. It is clearly in there. And also in the plea documents, it is also talking about either bodily injury or great bodily injury. And there is no mention in any of these documents of age, decrepit, any of the actual, of the other terms within the second alternative. And so I do believe with the jury instructions, with the plea documents, and with the charging documents, this Court can feel certain that Oklahoma's aggravated assault. Those three items. And, Your Honor, and the textual analysis that I pointed out, I do believe that this Court can feel certain that the statute is divisible. And so, Your Honor, I would like to move on briefly to the analysis as to whether, if it is divisible, the level of force that needs to be shown to show that this is a violent felony. The particular case I would like this Court to consider is United States v. Kendall. And in that case, it was talking about assault, and it was in a particular context, but the specific issue in terms of force was that the statute needed to have a, specifically, pain or bodily injury that needed to be applied to, that needed to be proven. And so here we have great bodily injury. It's similar language. It may not necessarily be the same. However, Your Honor, but this Court did find that that was sufficient to be, the level of force required. Now, in this case, I think it is helpful that the Oklahoma Court of Criminal Appeals has several cases where they have specifically, specifically talked about the level of force. And so the one case I would like to point out is State v. Morris. And in that case, it specifically held that a range of injuries, including cracked ribs, was not sufficient to be great bodily injury under the statute. And it walked through a series of different cases where, helpfully, that were not enough for great bodily injury and that were enough for great bodily injury. And so in some of those cases that were not enough, I think that's the more important part here. Evidence showing the victim suffered from bruises to the head and difficulty breathing, that was insufficient to be great bodily injury. Swollen and discolored eyelids and, discolored eyelids and face, that was insufficient to be great bodily injury. Injuries requiring surgery to the lips, that did not constitute a serious or great bodily injury. And so the Oklahoma Court of Criminal Appeals has explicitly, on multiple occasions, not exactly defined what a great bodily injury is, except to say that it is a more grave injury than what's going to result from a simple battery. However, I think from the case law, it can be determined. And also, Morris goes into that usually the cases involving great bodily injury require injury serious enough to the victim to require hospitalization and are serious enough for serious rehabilitative treatment. And so here, the defense's argument is that basically there's not a specific intent to cause a level of force for a great bodily injury. And that is simply not required. And the issue in Borden was whether a reckless mental state is sufficient to cause a certain level of force. And so here, Your Honor, that is not the case. We have an intentional level of force or an intentional mens rea to cause a level of force. So it's not necessary to prove intent to cause the great bodily injury? As long as there's intent to use force, that satisfies the mens rea requirement. Is that what you're saying? Yes, Your Honor. Because she was arguing, I think, that you can intend force, but you didn't need to intend that a great bodily injury would result. And therefore, it doesn't satisfy the Supreme Court's requirements. You're saying all the Supreme Court is requiring is some intent to use force. Yes, Your Honor. Yes, Your Honor, the intent to use force as opposed to recklessness. Or what they said is essentially, Borden said it still requires choice. Essentially, the person's making a choice and they're aware of the consequences. That's correct, Your Honor. Your Honor, my time has expired. I respectfully ask for this court to affirm the district court. Thank you. Ms. Jaffe, I think you've got almost two minutes. The government cannot meet its burden to show that this statute is divisible. This court needs to be certain, and it cannot be certain on the facts of this case. Briefly, on their subalternatives argument, this court addressed Taylor and Johnson and said that the Taylor court had no reason to determine whether those subalternatives were means or elements. So that's not persuasive in this case. Also, the status-based versus force-based idea. Again, forceful sodomy has a status-based sodomy and a force-based sodomy, and that's an indivisible crime. So it's also not allowing this court to be certain. With the jury instructions, we can't be certain because we know that in another case where it's a single crime, there are separate jury instructions. So we know Oklahoma doesn't only do this in cases where it's a divisible statute. And then for the charging documents, I just would direct the court to the judgments where all it says is aggravated assault and battery and then 21 section 646, no subsection ever. That's what he was convicted under, and I think that's very persuasive in this case. To the second issue, the government cites several cases that are pre-Borden basically for the idea that violent force is required in order to inflict violent injury. We don't dispute that. What we're saying is that there has to be an intent not to use any degree of force whatsoever against another person. There has to be an intent or knowledge to use physical force against someone else, and that's not required under the Oklahoma statute. What's required is that you have an intent to slightly touch someone. That's the least criminalized act. And it, in fact, inflicts great bodily injury. But you don't have to know that you are using that degree of force and you don't have to intend to use that degree of force in order to be convicted under this statute, and so it fails under Borden. And for those reasons, we'd ask the court to vacate Mr. Winrow's sentence and remand for resentencing without the ACCA enhancement. Thank you. Thank you, counsel. Case is admitted.